UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In the matter:

Vladimir M. Gorokhovsky,  Case No. 17-28901-beh

Debtor.  Chapter 7

Vladimir Gorokhovsky,

Plaintiff,

v.  Adv. Case No. 17-2360

Larissa Ocheretner,

Defendant.

**DECISION AND ORDER ON THE DEBTOR'S MOTION
FOR SANCTIONS UNDER 11 U.S.C. § 362(k) AND TO SHOW CAUSE
FOR VIOLATION OF THE AUTOMATIC STAY**

The debtor moved for sanctions against his ex-wife Larissa Ocheretner and her family law attorney, Jessica Marquez Murphy, for an alleged violation of the automatic stay. He claims that Ms. Ocheretner and Attorney Murphy violated the stay by filing an Order to Show Cause in the state court divorce action between Mr. Gorokhovsky and Ms. Ocheretner, seeking to enforce "Section 71" payment obligations that he incurred in a 2011 divorce judgment.[1] Ms. Ocheretner's bankruptcy counsel responded to the motion, asserting that her actions were excepted from the stay, and in any event, sanctions are not warranted.

---

[1] These obligations are so named because they refer to former Internal Revenue Code section 71, 26 U.S.C. § 71 (repealed on December 22, 2017 by the Tax Cuts and Jobs Act, Pub. L. No. 115-97, § 11051(b)), which provided that alimony and separate maintenance payments received by a party to a divorce agreement are to be treated as income by the recipient.

The Court held a hearing on the motion on June 28, 2018. After a full consideration of the circumstances, the Court denied the debtor's motion, for the reasons stated on the record. This written decision and order supplements the Court's earlier ruling.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

Based on the parties' filings, the record in this case, and the statements made at the June 28 hearing, the Court makes the following findings of fact.

Mr. Gorokhovsky filed a Chapter 7 bankruptcy petition, *pro se*, on September 8, 2017. At that time, a 2010 divorce action between Ms. Ocheretner (petitioner) and Mr. Gorokhovsky (respondent) remained pending in Ozaukee County, Wisconsin, as Case No. 10-FA-52. Three weeks after filing his bankruptcy case, on September 28, 2017, Mr. Gorokhovsky signed a stipulation for a change of venue, requesting that the divorce action be transferred to Milwaukee County. *See* CM-ECF, Doc. No. 18-1, at 4–5. The action ultimately was transferred to Milwaukee County in December 2017, and assigned Case No. 17-FA-9215.

On January 18, 2018, Ms. Ocheretner, through her family law attorney Jessica Marquez Murphy, filed an Order to Show Cause in the transferred state court case, requesting that Mr. Gorokhovsky be held in contempt for his alleged failure to make "Section 71" payments ordered by the parties' divorce judgment. *See* CM-ECF, Doc. No. 18-1, at 8–11. The Order to Show Cause was scheduled for a hearing four months later, on May 15, 2018 at 1:15 P.M. The hearing date and time were included in the body of the Order. Attorney Murphy avers that she filed the Order in the belief that the "[S]ection 71 payments were exempted from discharge and the automatic stay in the

Bankruptcy Court." *See* CM-ECF, Doc. No. 18-1, at 2. Mr. Gorokhovsky asserts that he received a copy of the state court Order to Show Cause on February 1, 2018. *See* CM-ECF, Doc. No. 14, ¶ 6.

Mr. Gorokhovsky filed his motion for sanctions (which is dated February 12, 2018) on February 15, 2018. The certificates of service attached to his motion and corresponding notice of motion (*see* CM-ECF, Doc. No. 14, at 11, 16), indicate that Mr. Gorokhovsky relied on the Court's electronic notification system to serve his motion, which provided notice of the motion to only the parties designated to receive notice through the Court's Case Management/ Electronic Case Files system. Neither Ms. Ocheretner nor Attorney Murphy are registered to receive electronic notice through that system. It is unclear when Ms. Ocheretner and Attorney Murphy received actual notice of Mr. Gorokhovsky's motion for sanctions.

Mr. Gorokhovsky's motion is devoid of information about the actions he took between the time he received the state court Order to Show Cause on February 1, and the time he filed his motion for sanctions on February 15— including any efforts to contact Attorney Murphy or Ms. Ocheretner to inform them of the alleged stay violation, or attempts to have the state court motion withdrawn. At the June 28 hearing before this Court, Mr. Gorokhovsky claimed that he contacted Attorney Murphy by email to inform her of the alleged stay violation, and that he possibly called Ms. Ocheretner, but he did not have a clear recollection of the timing of these emails or phone calls.

On February 21, 2018, Attorney Murphy filed correspondence with the Court dated February 20, stating that she had learned of the motion for sanctions from Ms. Ocheretner's bankruptcy attorney, and that she had withdrawn Ms. Ocheretner's state court Order to Show Cause. CM-ECF, Doc. No. 15. Attorney Murphy's affidavit in response to the motion for sanctions further avers that when she learned of the motion for sanctions, she immediately consulted with Ms. Ocheretner and withdrew the motion for contempt. CM-ECF, Doc. No. 18-1, at 2.

Prior to the withdrawal, Mr. Gorokhovsky took no action in the state court proceeding in response to the Order to Show Cause. The electronic docket for the state court action, available via a database known as CCAP (Consolidated Court Automation Programs), reflects that Attorney Murphy filed the Order to Show Cause on January 18, 2018.[2] The only subsequent event on the docket is a notation from February 20, 2018 indicating that the hearing on the Order had been canceled ("Per Att. Murphy, hearing scheduled for 5-15-2018 at 1:15 pm (FCC4) removed from the calendar."). The CCAP docket does not reflect that Mr. Gorokhovsky made any filings with the state court in response to the Order to Show Cause. Mr. Gorokhovsky confirmed this at the June 28 hearing.

Mr. Gorokhovsky's motion does not allege that he suffered any specific damages as a result of the filing of the Order. He states only that he "incurred actual expenses in the sum to be proven at trial." When asked to elaborate on his damages, Mr. Gorokhovsky described "reputational damages" resulting from the transfer of the divorce case from Ozaukee County to Milwaukee County—a transfer to which he stipulated—because Milwaukee County is his "home turf" as a practicing attorney. *See* CM-ECF, Doc. No. 37 (audio recording of June 28, 2018 hearing, beginning at approximately 24:10). Aside from these alleged reputational damages, the only "other damages" Mr. Gorokhovsky recited were "basically receiving the [state court] motion, reviewing it, reviewing CCAP, [and] responding to Ms. Murphy via telephone."

---

[2] This Court may take judicial notice of the state court docket under Federal Rule of Evidence 201. Rule 201(b) allows a court to take judicial notice of any fact that is "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2). *See, e.g., Guaranty Bank v. Chubb Corp.,* 538 F.3d 587, 591 (7th Cir. 2008) ("a court is of course entitled to take judicial notice of judicial proceedings"); *United States v. Doyle,* 121 F.3d 1078, 1088 (7th Cir. 1997) (taking judicial notice of district court's docket sheet). *See also Watton v. Hegerty*, 2007 WI App 267, ¶26 n.17, 306 Wis. 2d 542, 744 N.W.2d 619 (noting that CCAP records for a Milwaukee County Circuit Court case are "public records of which we may take judicial notice"), *reversed on other grounds,* 2008 WI 74; *Keller v. Patterson,* 2012 WI App 78, ¶16, 343 Wis. 2d 569, 819 N.W.2d 841 (explaining that filing of petitions and complaint created a public record available on CCAP).

*Id.* He repeatedly stated that his reputational damages were "hard to quantify," but opined that they were $1,000. *Id.*

Mr. Gorokhovsky's motion also seeks an award of punitive damages against both Ms. Ocheretner and Attorney Murphy, jointly and severally, and an order holding Ms. Ocheretner in contempt.

## APPLICABLE LAW

In his motion, Mr. Gorokhovsky frames the Court's legal inquiry as involving three questions: (1) whether Ms. Ocheretner's and Attorney Murphy's actions in filing the state court Order to Show Cause violated the stay; (2) if they did, whether the violation was willful; and (3) "whether the debtor is entitled to damages, including attorney's fees."

The first question is governed by Bankruptcy Code sections 362(a) and 362(b). Under section 362(a), the filing of a bankruptcy petition generally operates as a stay against "the commencement or continuation . . . of a judicial . . . proceeding against the debtor," and of "any act to collect . . . a claim against the debtor that arose before the commencement of the case." 11 U.S.C. §§ 362(a)(1), (6). Certain actions, however, are expressly excepted from this automatic stay. Relevant here, section 362(b)(2) excepts a number of family-law-related actions from the stay, including:

- "the commencement or continuation of a civil action or proceeding . . . for the establishment or modification of an order for domestic support obligations," section 362(b)(2)(A)(ii);

- "the collection of a domestic support obligation from property that is not property of the estate," section 362(b)(2)(B); and

- "with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute," section 362(b)(2)(C).

The debtor's second and third questions are governed by Code section 362(k) and related case law. Section 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover

actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). To recover damages under section 362(k), a debtor must prove two things: (1) that the stay was violated; and (2) that the debtor is entitled to compensation. This latter element requires the debtor to show that the stay violation was willful and that the debtor sustained actual damages as a result. *In re Aiello*, 231 B.R. 684, 688–89 (Bankr. N.D. Ill. 1999), *aff'd sub nom. Aiello v. Providian Fin. Corp.*, 257 B.R. 245 (N.D. Ill. 2000), *aff'd*, 239 F.3d 876 (7th Cir. 2001). A stay violation is willful if it was done knowingly; "there is no requirement that the creditor act with the intent to violate the stay; acting with knowledge of the bankruptcy and the stay is all that is necessary." *In re Yantis*, 553 B.R. 351, 354 (Bankr. N.D. Ind. 2016).

Additionally, "[t]o recover actual damages for a willful violation of the stay, a debtor must show the amount of damages with reasonable certainty. . . . A damage award cannot be based on mere speculation, guess, or conjecture." *In re Thompson*, 426 B.R. 759, 767–68 (Bankr. N.D. Ill. 2010). The debtor bears the burden of proving his right to damages by a preponderance of the evidence. *In re Harris*, 310 B.R. 395, 399 (Bankr. E.D. Wis. 2004).

Actual damages may be awarded under section 362(k) only if they were "proximately caused by and reasonably incurred as a result of the violation of the automatic stay." *In re Grine*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010); *see also In re Roman*, 283 B.R. 1, 11 (B.A.P. 9th Cir. 2002) ("Section 362([k]) 'requires that the injured party be awarded the entire amount of actual damages reasonably incurred as a result of a violation of the automatic stay.'"). This means that "debtors faced with violations of the stay have a duty to mitigate their damages." *Yantis*, 553 B.R. at 355. Many courts therefore look to the following factors in determining whether costs and attorney's fees are recoverable under section 362(k): "(1) what expenses or costs resulted from the violation and (2) what portion of those costs was reasonable, as opposed to

costs that could have been mitigated." *Roman*, 283 B.R. at 12. The Ninth Circuit BAP has cautioned: "Courts especially scrutinize cases where the debtor's only injuries are those incurred in litigating the motion for sanctions, and where there exist no circumstances warranting punitive damages." *Id.*

Last, punitive damages may be appropriate if there is evidence of maliciousness or bad faith on the part of the offending creditor. *In re Harris*, 310 B.R. at 400. In other words, "[p]unitive damages should only be awarded with respect to conduct which is tantamount to 'thumbing one[]'s nose at' the law, the debtor, and the Court." *In re Galmore,* 390 B.R. 901, 908 (Bankr. N.D. Ind. 2008). An award of punitive damages under section 362(k) is in part "a deterrent, i.e., to cause a change in the creditor's behavior, . . . [and in] part meant to punish egregious conduct." *Id.*

## DISCUSSION

With the foregoing principles in mind, the Court will address the three questions Mr. Gorokhovsky raises in his motion.

Turning to the first question—whether the stay was violated—the parties disagree over whether the filing of the state court Order was subject to the automatic stay. Mr. Gorokhovsky argues that the action violated the stay, although he does not expressly state which subsection of 362(a) he believes to have been disobeyed. Ms. Ocheretner, on the other hand, asserts that her actions were excepted from the stay, under several subsections of 362(b)(2)—specifically, (b)(2)(A)(ii), (b)(2)(B), and (b)(2)(C). As noted previously, those provisions provide that the filing of a bankruptcy petition does not operate as a stay of: (1) a civil proceeding for the establishment or modification of an order for domestic support obligations; (2) the collection of a domestic support obligation from property that is not property of the estate; and (3) withholding of income for payment of a domestic support obligation under court order or statute.

There is legal authority to support Ms. Ocheretner's argument that the filing of the Order to Show Cause, in the unique circumstances of this case,

was excepted from the stay, as an act to collect a domestic support obligation from non-estate property under section 362(b)(2)(B). *See, e.g., In re Johnston,* 321 B.R. 262, 277–78 (D. Ariz. 2005). To accept that argument, the Court first must make the factual findings necessary to conclude that the "Section 71" payments are "domestic support obligations" as defined by the Code—rather than a "property investment," as the debtor claims. The Court then must decide, as a matter of law, that the filing of the Order to Show Cause constitutes "collection" of that domestic support obligation from non-estate property. There is a split of authority on this legal question. While the Seventh Circuit has yet to provide a definitive answer, the majority of lower courts have concluded that a contempt action may qualify as a "collection" action within the meaning of section 362(b)(2)(B). *Compare In re Angelo*, 480 B.R. 70, 90 (Bankr. D. Mass. 2012) and *In re Glabb*, 261 B.R. 170, 174 (Bankr. W.D. Pa. 2001), with *In re Lori,* 241 B.R. 353 (Bankr. M.D. Pa. 1999).

Arguably, there is also factual support—albeit inferential—for Ms. Ocheretner's argument that the filing of the Order to Show Cause did not violate the stay, by virtue of Mr. Gorokhovsky himself stipulating to the change of venue in the divorce action, without first seeking relief from the bankruptcy stay to allow the state court action to proceed.

Yet the Court need not resolve the thorny issues posed by Mr. Gorokhovsky's first question today. Without deciding whether Ms. Ocheretner and Attorney Murphy violated the stay—or further, whether any such violation was willful—the Court can decide the motion for sanctions on the issue of damages. Even assuming, for present purposes only, that the filing of the state court motion was a willful violation of the stay, the debtor was not injured and did not suffer any "actual damages" as a result. The motion for sanctions therefore must be denied.

In his motion, Mr. Gorokhovsky does not allege that he sustained *any* damages as a result of the state court Order—let alone damages that are recoverable under section 362(k). *See, e.g., In re Tarone,* 434 B.R. 41, 53

(Bankr. E.D.N.Y. 2010) (denying debtor's motion for sanctions based on the failure to allege and prove a resulting injury: "'Violation of the automatic stay, standing alone, will not support award of damages under . . . 362[k].' . . . The Debtor's failure 'to allege a cognizable injury' as a result of [the creditor's stay violation] proves fatal to his claim for sanctions and damages.").

And based on the record, including comments made at the June 28 hearing, the Court cannot conclude that the filing of the state court Order caused Mr. Gorokhovsky any financial loss—which is the kind of loss that the Seventh Circuit says is within the contemplation of section 362(k). *See Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 879–80 (7th Cir. 2001) (Because the protection of the automatic stay "is financial in character," section 362(k) is designed to award "monetary relief necessary to restore [a debtor] to the financial position she would have occupied" had the stay not been violated.). Mr. Gorokhovsky did not file a response to the state court Order, was not required to attend any hearings on the matter, and was not deprived of any property as a result. He asserted some reputational damage, and attempted to quantify the amount as $1,000, but this alleged damage is linked to the voluntary transfer of his case to Milwaukee County—not to the filing of the Order to Show Cause. And the dollar amount is in the realm of speculation. In other words, Mr. Gorokhovsky has failed to allege that he incurred reasonably-certain monetary damages by virtue of the (short-lived) state court Order itself.

To the extent Mr. Gorokhovsky is seeking damages for costs and fees incurred in filing and prosecuting this motion for sanctions, any such damages were not reasonably incurred, because they could have been avoided. The motion itself does not describe any efforts Mr. Gorokhovsky made to try to resolve his dispute with Ms. Ocheretner and Attorney Murphy before filing his motion for sanctions. At the hearing on the motion, he claimed that he responded to Attorney Murphy via email and got no response in turn, but he was hazy on the details of that communication, and he never stated or implied that Attorney Murphy expressly refused a request to withdraw the state court Order based on any claim of a bankruptcy stay violation. Numerous courts

have refused to award damages when a debtor fails to make efforts to resolve a dispute with a creditor prior to filing a motion for sanctions. *See, e.g., In re Yantis,* 553 B.R. 351, 355 (Bankr. N.D. Ind. 2016); *In re Preston,* 333 B.R. 346, 350 (Bankr. M.D.N.C. 2005).

For example, the court in *Yantis* denied the debtors' motion for sanctions and recovery of costs and fees, despite finding that the creditor willfully violated the stay, based on the debtors' failure to mitigate their damages. The court explained:

> As to costs and attorney fees, debtors faced with violations of the stay have a duty to mitigate their damages, . . . and that is something these debtors failed to do. Instead, they did the opposite. Once it became apparent that the garnishment had not been stopped, rather than contacting defendant's counsel and alerting him to the situation, they hauled off and sued, seeking punitive damages and fees. All of this might have been avoided had debtors' counsel better communicated with creditor's counsel, instead of taking a "shoot first and ask questions later" approach to the situation. This proceeding should not have been filed as precipitously as it was and may never have been needed at all. As such, any fees and expenses could well have been avoided, were not necessary, and so, should not be recovered.

553 B.R. at 355.

Moreover, when a debtor's only actual damages resulting from a stay violation are "inconvenience and annoyance," the costs and fees for bringing an unnecessary sanctions motion are not "reasonable," and will not be allowed. *See In re McHenry,* 179 B.R. 165, 168 (B.A.P. 9th Cir. 1995) (upholding the bankruptcy court's denial of sanctions for the costs/fees in bringing an unnecessary motion for sanctions).

Based on the record in this case, the Court finds that the matter could have been resolved prior to court intervention. Attorney Murphy has averred to repeated attempts to obtain Mr. Gorokhovsky's cooperation in resolving the state court dispute, and she immediately withdrew the state court Order after learning of the motion for sanctions. The same result may have been achieved by a phone call, letter, or email, and would not have required this Court to

devote its time and resources to a motion that could have been avoided altogether. Any costs incurred in prosecuting this motion therefore were not "reasonably incurred."

Setting aside the question of reasonableness, Mr. Gorokhovsky's request for attorneys' fees also must be denied for another reason. *Pro se* debtors are not authorized to recover attorneys' fees under section 362(k), *e.g.*, *Salem v. Paroli*, 260 B.R. 246, 257 (S.D.N.Y. 2001). This is true even when the debtor is an attorney. *See In re Fitzpatrick*, 468 B.R. 391 (Bankr. C.D. Cal. 2012); *In re Davis*, 498 B.R. 64 (Bankr. D.S.C. 2013). *See also In re Muhammad*, No. 17-11935-7, 2018 WL 2473826, at *5 (Bankr. W.D. Wis. June 1, 2018) ("The request for costs and attorneys' fees must be denied. Counsel does not represent Muhammad. She is representing herself. She has not incurred any costs or attorneys' fees relating to the filing of the Motion.").

This leaves the debtor's final two requests: for punitive damages, and for a finding of contempt. The debtor's motion contains no allegations that would support an award of punitive damages. The only "fact" the debtor alleges in support of this request is that Ms. Ocheretner and Attorney Murphy were "fully aware of" his bankruptcy and this adversary proceeding. Aside from lacking factual support, the motion fails to identify the applicable standard for awarding punitive damages—other than to say that it is a matter of the Court's discretion—and incorrectly asserts that punitive damages are available "to compensate" an individual for violations of the stay. The purpose of punitive damages is not to compensate, but to deter future violations, or to punish a creditor for egregious conduct. There is no basis for the Court to conclude that Ms. Ocheretner's or Attorney Murphy's actions were egregious or require future deterrence. Their actions were taken under the belief that the Order to Show Cause was excepted from the automatic stay. As previously explained, there is a colorable legal and factual argument that is the case. And, upon learning of this motion for sanctions, they promptly withdrew the state court request.

As for a finding of contempt, to the extent that the filing of the Order to Show Cause violated the stay, any contempt was purged when Attorney Murphy withdrew the state court order. *See, e.g., In re Herbst*, 469 B.R. 299, 306 (Bankr. W.D. Wis. 2012).

## CONCLUSION

For the foregoing reasons, and consistent with the Court's June 28, 2018 oral ruling,

IT IS HEREBY ORDERED that the debtor's motion for sanctions and contempt under 11 U.S.C. § 362(k) is DENIED.

Dated: July 5, 2018

By the Court:

Beth E. Hanan
United States Bankruptcy Judge